UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:_____

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
DDBO CONSULTING, INC.,                )
DBBG CONSULTING, INC.,                )
DEAN R. BAKER, and                    )
BRET A. GROVE,                        )
                                      )
        Defendants.                   )
_____)

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I. INTRODUCTION

1.      The Commission brings this action against DDBO Consulting, Inc., DBBG Consulting, Inc., Dean R. Baker and Bret A. Grove (collectively, "Defendants") for violations of the registration and antifraud provisions of the federal securities laws.

2.      From no later than July 2011 until at least November 2012, the Defendants, directly and through the services of their sales agents, offered and or sold unregistered Thought Development, Inc. ("TDI") stock to at least 100 investors located throughout the United States, most of whom were senior citizens, and some of whom were unaccredited.

3.      TDI developed a laser-line system that can be used in professional and collegiate sporting events. The Defendants or their sales agents lured victims into investing in TDI by making false promises about investment returns on and timing of a purportedly pending initial public offering ("IPO"). Baker, DDBO Consulting and DBBG Consulting's sales agents also

misled investors concerning the status of negotiations with, and the use of TDI's first down laser technology by, the National Football League.

4.     The Defendants and their sales agents also failed to disclose to investors they used at least 50% of investor proceeds for commissions or other fees.

5.     As a result of the conduct described in this Complaint, the Defendants violated Sections 5(a) and (c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1), 77q(a)(2), 77q(a)(3); and Sections 10(b), 15(a) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), 15 U.S.C. § 78o(a) and 17 C.F.R. § 240.10b-5.

6.     Unless restrained and enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws.

7.     The Commission respectfully requests that the Court enter: (a) permanent injunctions restraining and enjoining the Defendants from violating the federal securities laws; (b) orders directing the Defendants to pay disgorgement with prejudgment interest; (c) orders directing the Defendants to pay civil money penalties; and (d) orders barring Baker and Grove from participating in any offering of a penny stock.

## II. DEFENDANTS AND RELATED ENTITY

### A. Defendants

8.     **Baker** resides in Coral Springs, Florida. Baker is and at all relevant times was the president of both DDBO Consulting and DBBG Consulting. During the relevant time period, Baker was not a registered broker-dealer nor affiliated with a registered broker-dealer.

9.     **Grove** resides in Delray Beach, Florida. Since January 2012, Grove has been the vice president of DBBG Consulting. During the relevant time period, Grove was not a registered

2

broker-dealer nor affiliated with one.

10. **DDBO Consulting** is a Florida corporation formed in October 2010 with its principal place of business in Fort Lauderdale, Florida. It has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or a class of securities under the Exchange Act.

11. **DBBG Consulting** is a Florida corporation formed in January 2012. Its principal place of business is located at the same address as DDBO Consulting in Fort Lauderdale, Florida. It has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or a class of securities under the Exchange Act.

B. **Related Entities and Individual**

12. **TDI** was incorporated in 2010 with its principal place of business in Miami Beach, Florida. It has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or a class of securities under the Exchange Act. On October 4, 2013, in an order on a related case, this Court entered a consent judgment enjoining TDI from further violations of registration provisions of federal securities laws. SEC v. Thought Development et al., 1:13-cv-23476-JEM. (S.D. Fla.).

13. **Advanced Equity Partners, LLC** ("AEP") and **Premiere Consulting, LLC** ("Premiere") are two Florida companies located at the same address in Hollywood, Florida. AEP and Premiere were controlled by Peter D. Kirschner and his business partner, both of whom raised approximately $2.4 million from investors in TDI stock while charging undisclosed exorbitant fees. On October 3, 2013, an order of permanent injunction and other relief was entered against AEP and Premiere ordering the entities to, among other things, pay

disgorgement, pre-judgment interest and a civil penalty to be determined by the Court. <u>SEC v. Advanced Equity Partners et al.</u>, 13-cv-62100-RSR (S.D. Fla.).

14.     **Kirschner** resides in Delray Beach, Florida and is a former managing member of Premiere and a current managing member of AEP.  He and his business partner founded Premiere and AEP, and hired and paid sales agents to, among other things, solicit investors to purchase unregistered stock in TDI.  On October 3, 2013, in a related case, this Court entered a consent judgment which, among others things, enjoined Kirschner from further violations of the registration and antifraud provisions of federal securities laws. <u>SEC v. Advanced Equity Partners, LLC et al.</u>, 13-cv-64321-RSR (S.D. Fla.).

### III. JURISDICTION AND VENUE

15.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 2(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

16.     The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because many of the Defendants' acts constituting violations of the Securities Act and the Exchange Act occurred in the District.  More specifically, the Defendants offered and sold securities and recruited sales agents who offered and sold securities from offices in Tamarac and Fort Lauderdale, Florida.  In addition, proceeds from the fraudulent sale of securities flowed into, and transaction-based payments to sales agents came out of, bank accounts located in Hollywood and Tamarac.  Moreover, Baker and Grove reside in the Southern District of Florida.

17.     In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of

interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails.

## IV. FACTUAL ALLEGATIONS

### A. TDI and Relationships with Premiere and AEP

18. TDI was incorporated in 2010 to develop and market a portfolio of products and inventions, including a laser-line system designed to mark first downs in professional and collegiate football games, including the NFL. TDI states that its laser system generates a green line on the field, which is visible in the stadium to players, fans and on television. TDI represents that use of its technology would decrease the time used by officials to determine first downs and generate more time to be sold to television advertisers.

19. Sometime in 2010, TDI entered into an agreement with Kirschner and his business partner to solicit investors to raise capital by selling TDI stock. Kirschner and his business partner formed Premiere, and later AEP, which, among other things, offered and sold unregistered TDI stock.

20. In approximately July 2011 Premiere and AEP entered into agreements with the Defendants to act as sales agents to offer and sell TDI stock. Pursuant to these agreements, the Defendants received transaction-based compensation in the form of commissions and other fees. The Defendants retained approximately 50% of investor proceeds as commissions on their sale of TDI stock.

21. Baker and Grove were aware that Premiere and AEP were also taking a portion of investor proceeds as commissions or other fees.

22. Baker and Grove offered and sold TDI stock directly to investors and received transaction-based compensation in the form of undisclosed commissions and other fees derived

5

from investor proceeds.

23. In addition, Baker and Grove recruited, hired and supervised sales agents who were paid transaction-based compensation in connection with the offer and sale of TDI stock from bank accounts Baker and or Grove controlled and held by DDBO Consulting or DBBG Consulting.

24. Some of these sales agents served as self-described "fronters" whose primary responsibility was to use lead lists which consisted of contact information of potential investors. Fronters made initial contact with potential investors and referred those interested in TDI to Baker, Grove or others to complete the stock purchase transaction.

25. Baker or Grove earned a percentage of commission or fee on every stock purchase, even those sales made by the sales agents they hired.

26. From July 2011 until November 2012, DDBO Consulting received approximately $419,000 from Premiere as compensation for the offer and sale of TDI stock.

27. From February 2012 until November 2012, DBBG Consulting received approximately $244,000, and DDBO Consulting received approximately $11,000 from AEP as compensation for the offer and sale of TDI stock.

**B. The Defendants' Solicitation of TDI Stock**

28. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the TDI stock that the Defendants and their sales agents offered and sold, and no exemption from registration existed with respect to these securities and transactions.

29. Neither the Defendants nor their sales agents provided investors a TDI private placement memorandum, financial information, or company risk disclosures during their

solicitations – other than general company information available on TDI's website.

30.   The Defendants and their sales agents made representations about the use of investor funds raised for TDI's business that were materially misleading because they failed to disclose commissions and other fees that added up to approximately 50% of the funds raised from investors in connection with the offer and sale of unregistered TDI stock.

31.   The Defendants or their sales agents also made material misrepresentations to investors regarding the expectant timing of or return on a purported IPO of TDI stock. Moreover, Baker and the sales agents made additional material misrepresentations on behalf of DDBO and DBBG regarding the status of negotiations with the NFL and the purported use of TDI's first down laser technology by certain teams and stadiums, or in the 2013 Super Bowl.

32.   The Defendants or their sales agents also recklessly made specific representations to investors in connection with the offer and sale of TDI stock without taking any basic steps to verify the truthfulness of those representations.

33.   The Defendants and their sales agents instructed investors to send, and investors did send, all payments for TDI stock transactions to bank accounts either Premiere or AEP held or controlled. Premiere and AEP used these bank accounts to pay its sales agents transaction-based compensation, including DDBO Consulting and DBBG Consulting.

34.   Neither the Defendants nor their sales agents were registered as broker-dealers or associated with a registered broker-dealer while facilitating and participating in these securities sales.

C.   **Material Misrepresentations and Omissions**

35.   In connection with the offering of securities during the relevant period, the Defendants made the following material misrepresentations and omissions to investors.

### 1. *Undisclosed Exorbitant Commissions or Other Fees and Use of Proceeds*

36. In some instances the Defendants made representations to investors about the use of investor funds for TDI's business that were materially misleading because they failed to disclose sale commissions and other fees that added up to approximately 50% of the funds raised from investors in connection with the offer and sale of unregistered TDI stock. The Defendants knew their sales agents also materially misled investors by failing to disclose the exorbitant commissions and other fees paid from the offering proceeds. On other occasions, sales agents on behalf of DDBO and DBBG misrepresented the commissions or other fees they retained or received in connection with the offer and sale of TDI stock.

37. For example, a DBBG sales agent lied to a 79 year-old retiree living on a fixed income regarding commissions or other fees connected with the purchase of purported TDI stock. DBBG sales agents told him they would only take a commission if, in the future, he resold the stock at a profit. In reality, DBBG was immediately paid its $15,000 commission on the $27,000 invested in commissions or other fees.

38. The Defendants or their sales agents also misrepresented the actual use of investor proceeds.

39. For example, the Defendants or their sales agents represented to investors the offering proceeds would be used for the development of TDI's technology and to fund a purported IPO of TDI stock, when, in fact, they were not.

### 2. *False Promises about Pending IPO and Investment Returns*

40. The Defendants and their sales agents falsely promised investors that TDI was about to go public. The Defendants failed to take any basic steps to verify the timing of TDI' purported IPO.

41. In addition, Baker, DDBO, DBBG and their sales agents falsely promised investors guaranteed returns, and that the value of TDI stock would increase significantly from $2.50 per share as a result of the purported IPO. In fact, TDI had no immediate plans to go public and there was no basis for these statements.

42. For example, in January 2012, Baker told an investor that TDI's IPO was "imminent" and, at the latest, would occur in "late-spring or summer 2012." Baker promised the anticipated opening price of TDI stock would be $8.50 per share.

### 3. *Use of the Technology*

43. Baker and sales agents, on behalf of DDBO and DBBG, promised investors that TDI's laser-line technology would be used by the NFL either during the preseason or regular season games. In some instances, Baker and Grove's sales agents told investors the NFL had agreed to use TDI's technology during the 2013 Super Bowl.

44. For example, in January 2012, Baker told an investor that TDI's technology would be used during the NFL's 2012 preseason. At that time, TDI had no agreement with the NFL.

45. In addition, one individual invested an additional $75,000, after previously investing $2,500, based on promises of a pending TDI IPO, because a sales agent of DBBG told him that NFL Commissioner Roger Goodell purportedly "purchased" the technology for the league for use in the Super Bowl.

46. These representations were false. Baker, DDBO and DBBG's sales agents had no basis for these statements. TDI did not have any agreements with the NFL or any team to feature its technology during football games, let alone at the Super Bowl. Moreover, Baker and DDBO and DBBG's sales agents failed to take any steps to verify the status of negotiations with or use

of the technology by the NFL.

## COUNT I

### Violation of Sections 5(a) and 5(c) of the Securities Act of 1933

47. The Commission realleges and incorporates paragraphs 1 through 34 of this Complaint.

48. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

49. As described above, the Defendants directly or indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; or (c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been filed.

50. By reasons of the foregoing, the Defendants violated, and, unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

51. The Commission realleges and incorporates paragraphs 1 through 46 of this

Complaint.

52. From no later than July 2011 until at least November 2012, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

53. By reason of the foregoing, the Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Fraud in Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act

54. The Commission realleges and incorporates paragraphs 1 through 46 of this Complaint.

55. From no later than July 2011 until at least November 2012, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices and courses of business which operated and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

56. By reason of the foregoing, the Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT IV

### Fraud In Violation of Section 10(b) and Rule 10b-5 of the Exchange Act

57.	The Commission realleges and incorporates paragraphs 1 through 46 of this Complaint.

58.	From no later than July 2011 until at least November 2012, the Defendants directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this complaint, knowingly, willfully or recklessly; (1) employed devices, schemes or artifices to defraud; (2) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities and will operate as a fraud upon the purchasers of such securities.

59.	By reasons of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5.

## COUNT V

### Violation of Section 15(a) of the Exchange Act

60.	The Commission realleges and incorporates paragraphs 1 through 39 of this Complaint.

61.	From no later than July 2011 until at least November 2012, the Defendants, while acting as or associated with a broker or dealer, effected transactions in, or induced or attempted to induce the purchase or sale of, securities while they were not registered with the Commission

as a broker or dealer or when they were not associated with an entity registered with the commission as a broker-dealer.

62. By reasons of the foregoing, the Defendants directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, representatives and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act, and Sections 10(b) and 15(a) and Rule 10b-5 of the Exchange Act.

### III.

### Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

## Penalties

Issue an Order directing each of the Defendants to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## V.

## Penny Stock Bar

Issue an Order barring Baker and Grove from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), for the violations alleged in this Complaint.

## VI.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VII.

## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

July 23, 2014

By: *Robert K. Levenson*
ROBERT K. LEVENSON
Regional Trial Counsel

Florida Bar No. 0089771
levensonr@sec.gov
Direct Dial: (305) 982-6341
Facsimile: (305) 536-4154

KEVIN B. HART
Senior Counsel
S.D. Fla. Bar No. A5501875
hartk@sec.gov
Direct Dial: (305) 982-6321
Facsimile: (305) 536-4152

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131